417 So.2d 257 (1982)
Anibal JARAMILLO, Appellant,
v.
STATE of Florida, Appellee.
No. 60570.
Supreme Court of Florida.
July 8, 1982.
Louis Casuso and Edward McHale of the Law Offices of Casuso & McHale, Coral Gables, for appellant.
Jim Smith, Atty. Gen. and Anthony C. Musto, Asst. Atty. Gen., Miami, for appellee.
ALDERMAN, Chief Justice.
Anibal Jaramillo appeals his two convictions for murder in the first degree and his sentences of death. Finding that the State's evidence is legally insufficient to support the guilty verdicts, we reverse the convictions and remand to the trial court with directions to discharge Jaramillo.
The State's case against Jaramillo was based on circumstantial evidence. A special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. In McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977), we reiterated this standard to be that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." See also McArthur v. Nourse, 369 So.2d 578 (Fla. 1979). Proof that Jaramillo's fingerprints were found on certain items in the murder victims' home was the only evidence offered by the State to show that Jaramillo was involved in these murders. This proof is not inconsistent with Jaramillo's reasonable explanation as to how his fingerprints came to be on these items in the victims' home. The State failed to establish that Jaramillo's fingerprints could only have been placed on the items at the time the murder was committed. Cf. Tirko v. State, 138 So.2d 388 (Fla. 3d DCA 1962).
The evidence the State introduced at trial showed that on December 2, 1980, police were called to a residence in Dade County where they discovered the bodies of the two victims. Each victim had been shot in the head three times. The associate medical examiner for Dade County stated that the deaths had occurred between 2 a.m., November 30, 1980, and 2 a.m., December 1, 1980. The bodies were lying in the dining-living room area where there were money and projectiles and shell casings scattered about on the floor. The male victim's hands had been tied behind his back with cord, and the female victim's hands had been handcuffed. On the handcuffs were identifiable latent fingerprints which did not belong to Jaramillo. A coil of cord similar to the cord used to tie the male victim's hands was found near his body. *258 Near the coil was the packaging for a knife. Jaramillo's latent fingerprint was found on this item. A knife, also possessing Jaramillo's latent fingerprint, was found on the dining room table. A grocery bag was located next to a chair on the east side of the table in the dining room. Jaramillo's fingerprint was found on this bag. Two bedrooms and two closets had been ransacked, and numerous latent fingerprints were obtained from this area, none of which belonged to Jaramillo. Another fingerprint which did not belong to Jaramillo was also found on the knife wrapper. The print technician stated that he had no way of determining when the fingerprints were placed on these items. After introducing this evidence, the State rested, and Jaramillo moved for judgment of acquittal on the basis that since the State's entire case was based on the fingerprints, it failed to carry its burden of proving that the prints were left at the murder scene at the time of the crimes and at no other time. The trial court denied this motion.
Jaramillo then took the stand to explain how and when his fingerprints were placed on the items in question. He stated that he and Edison Caicedo, the male victim's nephew who lived with the victims, had known each other for several years. On Saturday, November 29, 1980, he went to Edison's home. Edison, who was home alone at the time, asked Jaramillo if he would help him straighten the garage because it was in shambles. While they were stacking boxes in the garage, Jaramillo asked Edison if he had something to cut them with so that they could be more easily stacked. Edison told him that on the table in the dining room there was a bag with a knife in it. Jaramillo took the knife out of the bag, which he said also contained light bulbs, tissue paper, and rope, and took the knife out of its wrapper, leaving the wrapper in the dining room. He then went back to the garage to cut some boxes so they could be squashed. When he finished with the boxes and put them in his car, he placed the knife back on the dining room table where he had found it. He went home about 10 o'clock that Saturday night.
The State then called Mark Breslaw, a next-door neighbor of the victims, as a rebuttal witness. He testified that on Sunday, November 30, 1980, at about 7 p.m., he heard very loud noises from the victims' home which sounded like fighting, furniture being pushed around, a scream, and a gunshot. Upon cross-examination by defense, Breslaw stated that about an hour after hearing these noises he saw Edison about one mile from his house and that Edison had a look of anxiety on his face. Another rebuttal witness for the State, Elizabeth Lambroglia, then testified that at approximately 7:45 p.m. on Sunday, November 30, she observed Edison standing near a sign located about a half mile from the victims' home and that he appeared frightened. She and her husband drove Edison to his home. They remained in the car while Edison went up to the house for less than a minute. They then took him to the shopping center where some people who knew him picked him up and drove away.
At the close of the evidence, Jaramillo again moved for judgment of acquittal. This motion was denied. He later filed a motion for new trial on the basis that the court erred in denying his motion for judgment of acquittal since the evidence was insufficient as a matter of law to support his conviction. He also renewed his motion for judgment of acquittal. These motions were denied.
We conclude that the State's evidence was not legally sufficient to establish a prima facie case against Jaramillo. Accordingly, we reverse his convictions for first-degree murder and remand to the trial court with directions to discharge him.
It is so ordered.
BOYD, OVERTON, SUNDBERG, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents.